Richard C. LEVINE, Plaintiff-Appellee,

v.

CMP PUBLICATIONS, INC.,
Defendant-Appellant.

No. 83-1362.

United States Court of Appeals,
Fifth Circuit.

March 1, 1985.

Haynes & Boone, Donald C. Templin, Daniel E. Westbrook, Dallas, Tex., Townley & Updike, Andrew L. Hughes, New York City, for CMP.

Phalen, Chumlea & McQuality, Joseph G. Chumlea, Dallas, Tex., Mark S. McQuality, David Bragg, Austin, Tex., for Levine.

ON SUGGESTION FOR
REHEARING EN BANC

(Opinion August 13, 1984, 5 Cir., 1984, 738 F.2d 660)

Before TATE, JOLLY, and DAVIS, Circuit Judges.

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GAR-WOOD, JOLLY, HIGGINBOTHAM, DAVIS and HILL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge, with whom POLITZ, RANDALL, JERRE S. WILLIAMS and TATE join, dissenting.

The Constitution does not afford greater protection to loud-speaker systems than to people. Personal reputation is entitled to at least as much protection as electronic products. Moreover, the panel opinion permits the imposition of more than compensatory damages in this defamation case. For these reasons, I respectfully dissent from the court's denial of rehearing en banc.

In *Bose Corp. v. Consumers Union of United States, Inc.*,[1] the Supreme Court held that a federal court must independently review the facts on which a judge decided that a statement denigrating a manufacturer's loudspeaker system, unprotected by the first amendment, was made with actual malice, and that this review is not circumscribed by the "clearly erroneous" standard.[2] "[T]he rule of independent review assigns the judge a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge."[3] This heightened level of scrutiny is necessary in order "to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited."[4]

The panel opinion[5] finds that the *Bose* standard applies only to defamation actions brought by public figures or corporations selling products to the public, and that defamation actions by private individuals are subject to a different review standard under *Gertz v. Robert Welch, Inc.*[6] I do

1. ——— U.S. ———, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

2. Fed.R.Civ.P. 52(a).

3. *Bose Corp., supra,* ——— U.S. at ———, 104 S.Ct. at 1959, 80 L.Ed.2d at 516.

4. *Bose Corp. v. Consumers Union of United States, Inc., supra,* ——— U.S. at ———, 104 S.Ct. at 1962, 80 L.Ed.2d at 519 (1984).

5. *Levine v. CMP Publications, Inc.,* 738 F.2d 660, at 5302 n. 19 (5th Cir.1984).

6. 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

not think that *Bose* is so limited. Indeed, as to other issues, *Bose* cites *Gertz*[7] as if that decision were fully applicable to the issues considered in *Bose*. Although the Court has never held independent scrutiny of fact findings applicable to actions for the defamation of private persons, the thrust of its decisions, from *New York Times v. Sullivan*[8] to *Bose*, warrants, indeed requires, this application.

The majority opinion in *Bose* implicitly recognizes that its holding is not limited to product disparagement or public-figure defamation. The opinion describes the conflict the Court was required to resolve, and contrasts the provisions of Rule 52(a) with the lessons of *"cases raising First Amendment issues* [in which] we have repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure 'that the judgment does not constitute a forbidden intrusion on the field of free expression.' "[9] Although *New York Times v. Sullivan* is cited for this proposition, the opinion also cites other first amendment cases, such as *NAACP v. Claiborne Hardware Co.*,[10] which do not deal with public figure defamation. This is consistent with the thesis that the independent-examination standard is imposed by the first amendment in all cases, and is not limited to public-figure defamation or product disparagement.

The panel opinion also permits a jury to mulct the defendant in a defamation action of more than compensatory damages, contrary to the limit imposed by the first amendment as interpreted in *Gertz v. Robert Welch, Inc.*[11] The Court there held that "the private plaintiff who establishes liability under a less demanding standard than that stated by *New York Times* may recover only such damages as are sufficient to compensate him for actual injury."[12] Under a "mere-fault" standard of liability, therefore, a non-public figure plaintiff in a defamation case cannot recover punitive damages. The purpose of this limitation is to prevent juries from giving awards greatly in excess of what would be reasonable compensation, and thereby imposing a pecuniary "chill factor" on the media.[13]

The panel upheld an award of separate and cumulative damages against both the source of the defamatory statements, Gutman, and the publisher of Information Systems News, which disseminated the defamatory statements, without explicit instruction to the jury concerning the *Gertz* limitation. In the absence both of such an instruction and any instruction at all concerning the need for specific proof of pecuniary damage suffered separately as a result of the revelation of defamation to the magazine and its later publication in the magazine, the *Levine* award should have been vacated because it was not limited by constitutional standards.[14] The damages resulting from communication of defamatory information to a publisher may be different from those that result from its later publication to the general public. The jury should be clearly instructed to differentiate between the two, however, and the total amount of damages awarded must not exceed the sum necessary to compensate the plaintiff for actual injury.

The jury instructions concerning damages in this case not only failed to distin-

---

7. *Bose Corp. v. Consumers Union of United States, Inc., supra,* —— U.S. at ——, 104 S.Ct. at 1961, 80 L.Ed.2d 518 (1984).

8. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

9. *Bose Corp. v. Consumers Union of United States, Inc., supra,* —— U.S. at ——, 104 S.Ct. at 1958, 80 L.Ed.2d 515 (1984) (emphasis added).

10. 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982).

11. 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

12. *Id.* at 350, 94 S.Ct. at 3012, 41 L.Ed.2d 789 (1974).

13. *See Prosser and Keeton on Torts* § 116A (5th Ed.1984).

14. *See* Prosser and Keeton, *supra,* § 112.

guish between the damage caused Levine by the publication of the articles in *Information Systems News* and those caused by dissemination of defamatory statements to the reporter; they invited a duplicate award for the same injury. Thus one interrogatory (No. 8), otherwise unqualified, asked the jury to find "what sum of money ... would fairly and reasonably compensate Levine for the damages, if any, proximately caused to Levine by CMP by the article published by CMP in the February 25, 1980, issue of *Information Systems News*?" Another (No. 17) asked the identical question about the article published in the April 21, 1980, issue. But then Interrogatory No. 26 asked, "What sum of money ... would fairly and reasonably compensate Levine for the damages, if any, *proximately caused to Levine by Gutman by the republication by CMP of any defamatory false statement made by Gutman about Levine*?" (Emphasis added.) The answers to this question award identical amounts to those awarded in response to the first interrogatory quoted (No. 8), as follows:

   a.  Injuries to character and reputation.
      Answer: $25,000.00.

   b.  Mental suffering or anguish.
      Answer: $15,000.00.

   c.  Injuries for embarrassment.
      Answer: $25,000.00.

   d.  Injuries to profession and occupation.
      Answer: $200,000.00.

   e.  Lost of past earnings.
      Answer: $25,000.00.

   f.  Loss of future earnings.
      Answer: $200,000.00.

The jury thus assessed cumulative damages against both CMP and Gutman for the same publication. If, as appears evident, the only damage to Levine resulted from the "publication" and "republication" of defamatory statements in *Information Systems News,* a single amount of damages should be assessed and liability for payment of the award should be joint and several.

"Fault" is the appropriate standard to impose liability in private figure defamation cases. Civil juries are permitted to determine who is at fault in many kinds of actions, subject to review only to determine whether the verdict is supported by substantial evidence. The first amendment, however, does not permit us to impart the same latitude to jury findings when they determine fault or fix damages in cases involving freedom of speech and the press even though the publication concerns only private persons. Appellate courts must exercise more careful and searching scrutiny of findings of fault and assessment of damages in defamation cases than in the review of civil verdicts in ordinary tort cases. A jury verdict against a news publication for publishing an article is not to be reviewed as if it were a verdict for damages in an automobile accident case. The panel decision neglects this crucial distinction, and does not accord the first amendment the scope to which it is entitled.

For these reasons, I respectfully conclude that the panel erred, its opinion should have been vacated, and we should have reheard the case en banc.

---

PANEL RESPONSE TO DISSENT:

I.

Because our earlier opinion did not set out in detail our reasons for concluding that there was no "double recovery" in this case we feel it necessary to briefly address this concern raised here by Judge Rubin.

Judge Rubin argues that the jury awarded Levine full compensation for damages resulting from the February article against each of the defendants; in other words, that Levine's actual damages from the February article are one-half of what he was awarded by the jury. It is contended that this alleged "double recovery" is prohibited, absent a showing of "malice," by the first amendment under *New York Times.* Our view is simply that there has been no convincing showing of "double recovery" to warrant setting aside the jury verdict on this issue.

Two bases are offered to support the contention of "double recovery." First, the wording of two distinct interrogatories (numbers 8 and 26), which asked the jury to find actual damages specifically against CMP and specifically against Gutman respectively, is said to have confused the jury. Second, it is argued that the jury's award of actual damages in the same amount against CMP and against Gutman indicates double recovery. Although these contentions might prompt a court to investigate whether there has been a double recovery (which both the district court and the panel did), we do not believe they prove that the district court was in error in finding that the jury had not awarded double recovery.

CMP presented this "double recovery" argument to the district court, which rejected it and expressly found as a matter of fact that there was no double recovery:

The ... actual damage awards are within the range of damages reasonably supported by the evidence. Defendant CMP argues that the jury intended that the damages in Special Issue No. 8 and Special Issue No. 26 be awarded as a single joint and several liability. Special

Issue No. 8, however, inquires as to damages caused "by CMP", whereas Special Issue No. 26 refers to damages caused "by Gutman". It is true that the jury awarded the same amount against each Defendant. There is no evidence, however, that the jury intended, for example, a total liability of $25,000 for injuries to character and reputation, rather than $25,000 against each Defendant.

Order denying motion for a new trial, page 4.[1]

## II.

The issue of alleged "double recovery" would not have arisen in this case but for the defendants' failure to request a clarifying instruction to the jury. Interrogatories 8 and 26 by their terms instruct the jury to determine separate damage awards; CMP's argument accordingly amounts to an assertion that the interrogatories misled the jury. However, CMP did not object to the form of these interrogatories at trial and is accordingly barred from raising the issue on appeal absent a showing of plain error. *American Lease Plans, Inc. v. Houghton*, 492 F.2d 34 (5th Cir.1974). "[E]ven if the ... instructions could be said

1. The texts of Interrogatories 8 and 26 are, in relevant part, as follows:

SPECIAL ISSUE NO. 8

What sum of money, if any, if paid now in cash by CMP, do you find from a preponderance of the evidence, would fairly and reasonably compensate Levine, for the damages, if any, *proximately caused to Levine by CMP by the article published by CMP in the February 25, 1980, issue of Information Systems News?* Consider the following elements of damages and none, other, giving your answers in dollars and cents, if any, as to each element:

a. Injuries to character and reputation.
   Answer: $ [25,000.00]
b. Mental suffering or anguish.
   Answer: $ [15,000.00]
c. Injuries for embarrassment.
   Answer: $ [25,000.00]
d. Injuries to profession and occupation.
   Answer: $ [200,000.00]
e. Loss of past earnings.
   Answer: $ [25,000.00]
f. Loss of future earnings.
   Answer: $ [200,000.00]

(Emphasis added.)

SPECIAL ISSUE NO. 26

What sum of money, if any, if paid now in cash by Gutman, do you find from a preponderance of the evidence, would fairly and reasonably compensate Levine, for the damages, if any, *proximately caused to Levine by Gutman by the republication by CMP of any defamatory false statement made by Gutman about Levine?* Consider the following elements of damages and none, other, giving your answers in dollars and cents, if any, as to each element:

a. Injuries to character and reputation.
   Answer: $ [25,000.00]
b. Mental suffering or anguish.
   Answer: $ [15,000.00]
c. Injuries for embarrassment.
   Answer: $ [25,000.00]
d. Injuries to profession and occupation.
   Answer: $ [200,000.00]
e. Loss of past earnings.
   Answer: $ [25,000.00]
f. Loss of future earnings.
   Answer: $ [200,000.00]

(Emphasis added.)

to be misleading when viewed as a whole ... appellants waived their right to raise that instructional error here, for they failed to object in a timely manner to the final ... instruction proposed by the trial court. F.R.Civ.P. 51." *Johnston v. Pierce Packing Co.,* 550 F.2d 474, 479–80 (9th Cir. 1977).

After reviewing all of the evidence, we do not believe any error, and certainly not plain error, is present here. The damage done to Levine by the February article came from three sources: first, republication of Gutman's statements; second, publication of CMP's negligent characterization of certain Gutman statements; and, third, CMP's publication of information derived from court records by Patton. For the reasons discussed below, we believe the jury's responses indicate it is likely they believed that Gutman was more responsible than CMP for the damage from the first source. However, Levine may indeed have suffered damage from the other sources, for which Gutman was not responsible. That the jury understood that not all damage done to Levine was done by republication of Gutman's statements is evidenced by the fact that Interrogatory 17 awarded $23,500 in damages against CMP for its second April article, for which no damages against Gutman were separately sought. In sum, the total actual damages returned by the jury against CMP were $23,500 more than those assessed against Gutman.

The jury's responses are consistent with its likely belief that more of the damage done by the republication of Gutman's statements was caused by Gutman than was caused by CMP. With respect to the February article, the jury awarded Levine only $200,000 punitive damages against CMP. But it awarded $250,000 punitive damages against Gutman. The jury also expressly found that Gutman caused the republication as a natural and probable consequence of his acts.

The jury's entire award is consistent with its likely belief that Gutman was more culpable with respect to the damage caused by republication of his statements than was CMP, but that CMP published damaging information in addition to that which it obtained from Gutman. It is reasonable and likely that the jury reached an approximate solution by awarding equal amounts separately against CMP and Gutman for damages caused by the first article and additional recovery against CMP for actual damages resulting from the second article. We therefore adhere to our earlier view expressed in the panel opinion that no convincing showing of "double recovery" sufficient to warrant setting aside the jury verdict has been made on this issue.

Circuit Judge TATE agrees with Circuit Judge RUBIN's dissent and consequently does not join this opinion.